## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------
DENIS FAKHURTDINOV, *on behalf of himself and others similarly situated in the proposed FLSA Collective Action*,

                      Plaintiff,

    -v-

ITG COMMUNICATIONS, LLC, DOMESTIC SUPPLY INC., and DANILA BARANNIKOV,

                      Defendants.

---------------------------------------------------------

Case No. 24-cv-01696 (DG)(SJB)


### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF *AND DEFENDANT ITG'S* MOTION TO ENFORCE AN ALLEGED SETTLEMENT AGREEMENT AND IN OPPOSING TO PLAINTIFF'S MOTION FOR SANCTIONS


VORONTSOV LAW FIRM, PLLC.

By: */s/Denis Vorontsov*
Denis Vorontsov, Esq.
dv@vlf.law
1599 East 15th Street, 4th Floor.
Brooklyn, NY 11230
T: 212.295.5838
F: 212.295.5839

*Attorney for Defendants Domestic Supply, Inc and Danila Barannikov*

Cc: All Parties via ECF

LEVIN-EPSTEIN & ASSOCIATES P.C.
By: /s/ *Jason Mizrahi*
Jason Mizrahi, Esq.
Joshua Levin-Epstein, Esq.
60 East 42nd Street, Suite 4700
New York, NY 10165
Tel No.: (212) 792-0048
Email: Jason@levinepstein.com
*Attorneys for Plaintiff*
Cc: All parties via ECF

## **TABLE OF CONTENTS**

**I. PRELIMINARY STATEMENT** ................................................................................................. 1

**II. STATEMENT OF FACTS** ......................................................................................................... 2

**III. LEGAL STANDARD TO ENFORCE A SETTLEMENT AGREEMENT** ....................... 5

**IV. LEGAL STANDARD FOR SANCTIONS UNDER 28 U.S.C. § 1927** ............................... 6

**V. ARGUMENT** ............................................................................................................................... 6

   **A. No Binding Agreement Was Reached: Lack of Authority and Mutual Accent form Necessary Parties** ....................................................................................................................... 6

   **B. The Purported Settlement Agreement Fails Under the Winston Factors** ...................... 8
      1. Reservation of the Right Not to Be Bound ........................................................................ 8
      2. Lack of Partial Performance ................................................................................................ 9
      3. No Agreement on Material Terms ...................................................................................... 9
      C. Defendants' Lack of Legal Representation and Language Assistance, and the Ambiguity of the Broken Chain of Emails Preclude Enforceability of the Alleged Settlement ............. 11

**VI. Conclusion** ................................................................................................................................ 14

## **TABLE OF AUTHORITIES**

Page(s)

Cases

*Ciaramella v. Reader's Digest Ass'n*,
   131 F.3d 320 ................................................................................................................... 5
*Co. L.P. v. Jasco Trading, Inc.*,
   5 F. Supp. 3d 323 (E.D.N.Y. 2014) ............................................................................. 5, 8
*Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*,
   887 F. Supp. 2d 459 (E.D.N.Y. 2012) ............................................................................ 5
*Fierro v. Yellen (In re Fierro)*,
   616 B.R. 596 (E.D.N.Y. 2020) ....................................................................................... 6
*Fisher v. Aetna Life Ins. Co.*,
   32 F.4th 124 (2d Cir. 2022) ........................................................................................ 7, 8
*Gollomp v. Spitzer*,
   568 F.3d 355 (2d Cir. 2009) ........................................................................................... 6
*Kai Peng v. Uber Techs.*, Inc.,
   237 F. Supp. 3d 36, (E.D.N.Y. 2017) ............................................................................. 5
*Mahoney v. Yamaha Motor Corp.*,
   290 F.R.D. 363 (E.D.N.Y. 2013) ................................................................................... 6
*Martin v. Giordano*,
   185 F. Supp. 3d 339 (S.D.N.Y. 2016) .......................................................................... 13
*Min v. Target Stores*,
   553 F. Supp. 2d 218 (E.D.N.Y. 2008) .................................................................... 11, 12
*Popat v. Levy*,
   328 F. Supp. 3d 106 (S.D.N.Y. 2018) ..................................................................... 12, 13
*Quinio v. Aala*,
   344 F. Supp. 3d 464 (E.D.N.Y. 2018) ............................................................................ 5
*Rossbach v. Montefiore Med. Ctr.*,
   81 F.4th 124 (2d Cir. 2023) ..................................................................................... 12, 13
*Schurr v. Austin Galleries of Illinois, Inc.*,
   719 F.2d 571 (2d Cir. 1983) ................................................................................... 5, 7, 8
*Ted Lapidus, S.A. v. Vann*,
   112 F.3d 91 (2d Cir. 1997) ........................................................................................... 13
*Wilder v. GL Bus Lines, Inc.*,
   258 F.3d 126 (2d Cir. 2001) ........................................................................................... 6
*Winston v. Mediafare Entertainment Corp.*,
   777 F.2d 78 (2d Cir. 1985) .....................................................................................Passim
*Wood v. Brosse U.S.A., Inc.*,
   149 F.R.D. 44 (S.D.N.Y. 1993) ................................................................................... 12

Statutes

28 U.S.C. § 1927 ............................................................................................................... 6, 13

Other Authorities

*Olive Group North America, LLC v. Afghanistan International Bank*,
   2023 U.S. Dist. LEXIS 52024 (S.D.N.Y. 2023) ..................................................................... 12
*Rivera v. Crabby Shack*,
   2019 U.S. Dist. LEXIS 230587 (E.D.N.Y.) ............................................................................. 9

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------
DENIS FAKHURTDINOV, *on behalf of himself and others similarly situated in the proposed FLSA Collective Action*,

      Plaintiff,

  -v-

ITG COMMUNICATIONS, LLC, DOMESTIC SUPPLY INC., and DANILA BARANNIKOV,

      Defendants.

-----------------------------------------------------------

Case No. 24-cv-01696 (DG)(SJB)

**Memorandum of Law
in Opposition of Motion**

Individual Defendant Danila Barannikov and corporate Defendant Domestic Supply, Inc. ("Domestic") (collectively, the "Barannikov Defendants"), by and through their attorney, Vorontsov Law Firm, PLLC, submit this opposition to Plaintiff Denis Fakhurtdinov's ("Plaintiff") and Defendant/Cross-Claimant ITG Communications, LLC's ("ITG Communications" or "ITG") Motion to Enforce Parties' alleged "Settlement Agreement," as well as Plaintiff's Motion for related Sanctions. In support of their opposition, the Barannikov Defendants respectfully submit Affirmations along with the following legal arguments:

## I. PRELIMINARY STATEMENT

Contrary to Plaintiff's assertions, the Barannikov Defendants dispute that any binding settlement had been reached. The discussions following the Court-ordered mediation were incomplete, non-binding, and lacked essential terms and parties. The Barannikov Defendants acknowledge that their prior counsel, a criminal/immigration attorney, was unprepared for the procedural and substantive demands of this litigation. This attorney, who volunteered his services *pro bono* was admitted to practice in the Eastern District of New York in May 2024, failed to

1

respond to the pleadings and mishandled the mediation process. Despite clear instructions from the Barannikov Defendants, their former counsel proceeded in a manner that incorrectly suggests that the Barannikov Defendants had the intention of agreeing to Plaintiff's proposed terms.

Opposing counsel capitalized on the former counsel's lack of experience, by pressuring the Barannikov Defendants during the mediation on October 2, 2024. Plaintiff and Defendant ITG now seek to convert vague and incomplete email exchanges into a binding contract, despite the absence of essential terms and in contradiction to the overwhelming evidence of a contractor relationship that could undermine Plaintiff's Fair Labor Standards Act ("FLSA") claims and/or to shift liability to Defendant ITG.

Rather than allowing the Barannikov Defendants an opportunity to contest the merits of the claims, Plaintiff and Defendant ITG Communications ask the Court to rule, as a matter of law, that the Barannikov Defendants intended to enter a binding agreement. They further ask the Court to confirm that the series of unclear and broken email chains contain all the necessary elements of a legally enforceable contract. While the Barannikov Defendants acknowledge their former counsel's shortcomings, these errors were the result of mistake and inexperience, not misconduct, bad faith, or improper purpose. Accordingly, the Barannikov Defendants should not be penalized, and the Motions should be denied, with further relief to be granted as deemed appropriate by the Court.

## II. STATEMENT OF FACTS

The Parties met virtually on October 2, 2024, in an effort to resolve the matter amicably. Present at the mediation were counsel for all parties, including Steven Zuck, Esq., who was representing the Barannikov Defendants on a *pro bono* basis. *See* Barannikov Declaration, ¶¶ 5, 9. Mr. Zuck, however, lacked experience in litigation and had no background in handling FLSA

cases. *See Id.*, ¶ 10. His inexperience was apparent throughout the proceedings, including his failure to file an Answer, assert affirmative defenses, etc. (Vorontsov Declaration ¶¶ 4, 6). Additionally, Mr. Zuck acted as an informal interpreter for the Barannikov Defendants, who face significant language barriers. (Barranikov Declaration, ¶ 9). Notably, no professional translators were present during the virtual mediation to assist Barannikov. *See Id.*

On the same day, following the mediation, the Barannikov Defendants sought to terminate Mr. Zuck's representation, citing a lack of confidence in his ability to follow instructions and adequately advocate on their behalf. *Id.* at ¶ 11. Consequently, Mr. Zuck was expected to cease representing them entirely and notify the Court and opposing counsel of his need to withdraw his representation. However, due to Defendant Domestic Supply's corporate status, Mr. Zuck, accurately believed that it was necessary for him to remain as counsel until the Defendant Domestic Supply obtains new counsel and that the Court permits the substitution. (Vorontsov Declaration, ¶ 7)

Following the virtual mediation, Plaintiff's counsel sent an email on October 3, 2024, summarizing the outcome of the mediation in three vague bullet points, purportedly memorializing the settlement. *See Plaintiff's Exhibit A*. This email mentioned that a $45,000 payment is to be made in three monthly installments but **failed to specify which defendant — whether it was Defendant Barannikov, Defendant Domestic, or Defendant ITG — was responsible for the payments**. *See* Plaintiff's Ex. 1. This omission created significant ambiguity and confusion regarding the essential terms of the agreement. (Vorontsov Declaration ¶; Barannikov Declaration ¶ .) Despite these material ambiguities, Plaintiff now asserts that this email constitutes a binding contract.

3

On October 3, 2024, Defendant ITG Communication's counsel sent a reply-all email, stating "ITG will not be making a payment to Plaintiff or [its] firm." While Mr. Zuck appears to have been carbon copied on this email, there is no confirmation that he actually reviewed it, acknowledged its contents and agreed to the modification of the terms proposed by Defendant ITG. On October 7, 2024, without acknowledging the October 3 email from Defendant ITG, Mr. Zuck responded only to Plaintiff's email from October 2, writing: "[o]n behalf of **Defendant Domestic Supply**, we confirm paragraphs 1–3." (*See Plaintiff's Ex. C*) *(emphasis added)*. Moreover, Defendant Barannikov, who was technically unrepresented at the time, was not included in the email exchange. This broken chain of emails, which Plaintiff claims constitutes the settlement agreement, fails to include not only the necessary terms and elements, but also the necessary parties.

In a separate email chain (*See* Plaintiff's Ex. D), on October 4, 2024, absent any acknowledgment from Mr. Zuck, counsel for **Defendant ITG Communications** apparently advised Plaintiff that it would draft the long-form settlement agreement and circulate the draft on October 14, 2024 (Mizrahi Declaration ¶¶ 6, 14). ITG then produced a twenty-page contract shifting all liability to its co-defendants. Meanwhile, Defendant Barannikov believed that neither he nor Defendant Domestic Supply were liable for the payments.

Plaintiff's counsel admits that since the October 2 mediation, Mr. Zuck's lack of communication became a concern; "[Plaintiff's counsel] emailed, and called, counsel for the [Barranikov Defendants] twelve (12) times…with no response." *See* Mizrahi Declaration ¶ 8. Despite the communication issues, Plaintiff took it upon himself to submit a letter on November 5, 2024, claiming that the parties had reached an agreement-in-principle at the October 2 Mediation. *See* Dckt. No. 21. This led the Court to mistakenly enter a Confirmatory Order, on

4

November 8, 2024, that the case was resolved at mediation, despite Plaintiff's counsel knowing of the breakdown in communications. Finally, on November 13, 2024, Mr. Zuck informed all the parties in writing that "Domestic Supply will not be moving forward with the settlement at this time." *See* Plaintiff's Ex. D.

### III. LEGAL STANDARD TO ENFORCE A SETTLEMENT AGREEMENT

Settlement agreements are governed according to the principles of contract law. *Sprint Communs. Co. L.P. v. Jasco Trading, Inc.,* 5 F. Supp. 3d 323 (E.D.N.Y. 2014). To establish an enforceable settlement agreement, the proponent must prove all the essential elements: a valid offer, acceptance, consideration, mutual assent, and an intent by all the parties to be bound. *Kai Peng v. Uber Techs*., Inc., 237 F. Supp. 3d 36, (E.D.N.Y. 2017). These requirements ensure a mutual understanding and meeting of the minds on all essential terms. *Quinio v. Aala*, 344 F. Supp. 3d 464 (E.D.N.Y. 2018), *Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*, 887 F. Supp. 2d 459 (E.D.N.Y. 2012).

For a settlement agreement to be enforceable, the offer and acceptance must mirror each other, reflecting mutual agreement on all essential terms. *Schurr v. Austin Galleries of Illinois, Inc.,* 719 F.2d 571, 576 (2d Cir. 1983). In multi-party agreements, mutual assent on all essential terms is critical. "If there is no meeting of the minds on all essential terms, there is no contract." *Schurr* at 576. The burden of proof lies with the party seeking enforcement. *Id.*

Under New York Law, determining whether a binding settlement agreement exists, requires examining the intentions of all parties. *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78 (2d Cir. 1985). Intent is assessed by reviewing the totality of the circumstances, including the parties' words and deeds. *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320. In *Winston v. Mediafare*, the Second Circuit identified four factors for determining intent to be bound: (1)

5

whether there has been an express or implied reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance; (3) whether all terms of the alleged contract have been agreed upon; and (4) whether the agreement is the type usually committed to writing. *Id. at 78*.

## IV. LEGAL STANDARD FOR SANCTIONS UNDER 28 U.S.C. § 1927

28 U.S.C. § 1927 permits sanctions against an attorney who "unreasonably and vexatiously" multiplies proceedings. Sanctions require a finding of bad faith, involving conduct undertaken with improper purpose, such as harassment, delay or improper advantage. *Gollomp v. Spitzer*, 568 F.3d 355, 370 (2d Cir. 2009). Merely failing to meet procedural deadlines, making mistakes, or exercising poor judgement does not constitute bad faith. *Wilder v. GL Bus Lines, Inc.*, 258 F.3d 126 (2d Cir. 2001).

The Second Circuit has emphasized that the imposition of sanctions under § 1927 is a drastic remedy imposed for egregious misconduct intended to frustrate or impede proceedings. See *Mahoney v. Yamaha Motor Corp.*, 290 F.R.D. 363, 367 (E.D.N.Y. 2013); *Fierro v. Yellen (In re Fierro)*, 616 B.R. 596, 604 (E.D.N.Y. 2020). There is no such evidence in this case.

## V. ARGUMENT

### A. No Binding Agreement Was Reached: Lack of Authority and Mutual Accent form Necessary Parties

Arguendo, even if Mr. Zuck was considered to have had apparent authority over the Defendant Domestic (he did not) he unquestionably lacked authority to bind the individual Defendant Barannikov, a necessary party to any potential agreement. The email exchange on October 7, 2024, in which Mr. Zuck responded to Plaintiff's October 2 email, clearly demonstrates

6

that Mr. Zuck was only agreeing "*on behalf of Defendant Domestic Supply we confirm paragraphs 1-3.*" See Vorontsov Declaration, ¶ 8; Plaintiff's Ex. 3.

Mr. Zuck's representation was terminated shortly following the mediation on October 2, 2024. *See* Darannikov Declaration, ¶ 16. Additionally, Mr. Barannikov was never carbon copied on any of the emails, nor did he authorize Mr. Zuck to respond on his behalf. Most importantly, Mr. Barannikov was entirely unaware of the communication exchanged between the attorneys. (Barannikov Declaration ¶¶ 1–3). These facts undermine any assertion that Mr. Zuck had authority to act on behalf of all necessary parties. Without such authority, there is no mutual assent, and thus no enforceable contract.

Under well-established contract law, mutual assent — a meeting of the minds on all essential terms — is a critical element for the formation of a binding contract. Here, the email exchange between Mr. Zuck and Plaintiff does not demonstrate mutual assent or intent from Mr. Barannikov to be bound, and therefore any purported settlement that relies on these emails cannot be enforced against him.

Under New York law which governs the principles of contract formation in this case, mutual assent requires a meeting of the minds on all essential terms. *Schurr v. Austin Galleries of Illinois, Inc.*, 719 F.2d 571, 576 (2d Cir. 1983). The email exchange on October 7, 2024, in which Mr. Zuck confirmed paragraphs 1–3 *on behalf of Defendant Domestic Supply*, does not demonstrate mutual assent from Mr. Barannikov. The termination of Mr. Zuck's representation and the lack of authorization or knowledge on the part of Mr. Barannikov indicate that there was no meeting of the minds between the parties. Without mutual assent, no binding contract can be enforced. *Fisher v. Aetna Life Ins. Co.*, 32 F.4th 124 (2d Cir. 2022). "If there is no meeting of the

7

minds on all essential terms, there is no contract." *Schurr*, at 576. "This is because an enforceable contract requires mutual assent to the essential terms and conditions thereof." *Id.*

Further supporting this principle, in *Sprint Communs. Co. L.P. v. Jasco Trading, Inc.*, 5 F. Supp. 3d 323 (E.D.N.Y. 2014), the court found that an unexecuted contract is not enforceable unless all the parties intended to be bound in the absence of a fully executed agreement. The court applied the *Winston* factors to determine whether the parties intended to be bound by the terms without a final, signed fully executed document. *Id.* (citing *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78 (2d Cir. 1985)).

## B. The Purported Settlement Agreement Fails Under the Winston Factors

The Second Circuit's four-factor test in *Winston* further supports the conclusion that no enforceable agreement exists.

### 1. Reservation of the Right Not to Be Bound

The absence of a signed agreement indicates an implied reservation of the right not to be bound. The parties explicitly contemplated the preparation and circulation of a formal, long-form settlement agreement. (Mizrahi Declaration, ¶ 6). This demonstrates the parties' intent not to be bound until the agreement was finalized and executed. Under *Winston*, if there was an "express or implied reservation of the right not to be bound," it would weigh against enforceability. Here, the Barannikov Defendants, unfamiliar FLSA mediation process, assumed that the mediation is not binding until a formal agreement is signed. This assumption is supported by the discussions surrounding a formal settlement agreement. See Plaintiff Ex.4.

8

### 2. Lack of Partial Performance

No actions were taken by the Barannikov Defendants to perform under the alleged agreement. Another factor in *Winston* weighing against enforceability *here* is that there haven't been any actions by the Barannikov Defendants demonstrating "partial performance" of the purported terms of the settlement agreement. On the other hand, the Barannikov Defendants communicated their intention NOT to agree to the terms offered at the October 2, 2024, mediations to their former lawyer, and then proceeded to terminate his services and transfer the case to new counsel so it can be defended on merits. (See Aff. ¶). Moreover, it is obvious from the lack of communication and participation by former counsel in the drafting, commenting or editing the long-form settlement agreement, that the Barannikov Defendants did not intend to agree with the proposed terms. These actions negate any claim of partial performance.

### 3. No Agreement on Material Terms

The third factor of *Winston* that weighs the intentions of the parties to be bound by the settlement agreement, is whether the parties actually "agreed on all the material terms." *Winston*, at 80. Here, the broken chain of emails fails to include several material terms that are typically memorialized upon the completion of a successful FLSA settlement mediation. Furthermore, the facts and circumstances of the case at bar, are different from the scenario in *Rivera v. Crabby Shack*, 2019 U.S. Dist. LEXIS 230587 (E.D.N.Y.), where the defendant sought to set aside their FLSA settlement agreement because there was a dispute over attorney fees. Moreover, unlike here, in *Crabby Shack*, the parties, were always represented by seasoned employment attorneys that have familiarity with the potentially binding effect of mediation. Here, Plaintiff alleges that its email serves as a contract, but it fails to address several material terms that are typically included in settlement agreements. This Court noted in *Crabby Shack* that their informal handwritten

9

document memorializing the mediation "sets out nine agreed-upon terms, and reads in its entirety as follows:

    a) $35,000
    b) Joint and several liability,
    c) Payment over 24 months
    d) Fair Labor Standards Act ("FLSA") release, and confidentiality,
    e) Payments due at the last date of the month
    f) Default interest at 9%, since the filing,
    g) Court maintains jurisdiction,
    h) 30 days notice of default, and
    i) 5 day cure." *Id.* at \*2.

Here, there is an absence of six of the nine terms listed in *Crabby Shack*. Not only does this purported settlement agreement lack mutual assent on the material terms, but the omission of these essential terms also demonstrates that the Parties did not reach a complete and binding agreement. *Winston v. Mediafare Entm't Corp.,* 777 F.2d 78 (2d Cir. 1985). In *Crabby Shack*, the court emphasized the importance of including all material terms in a settlement agreement. *Id*.

4. **Customary Requirements for Written Agreements**

FLSA settlements are typically formalized in written agreements to ensure clarity and compliance with legal standards. The absence of such a document supports the Barannikov Defendants' position that no binding agreement exists. Consistent with the final *Winston* factor, "settlement agreements are typically reduced to writing," W*inston,* 777 F.2d 78, especially those involving three defendants. Here the Barannikov Defendants were misinformed by their former counsel, Mr. Zuck, who lacked the requisite experience to competently represent them in an FLSA mediation. Mr. Zuck, truly a criminal defense attorney, worked through the matter with the impression that the Parties will not be bound to any agreement until it was in writing. Furthermore, Defendant ITG's insistence on writing a formal settlement agreement only solidified Barannikov

Defendant's belief that they will not be bound until they execute a formalized written contract. The absence of a signed document in this context suggests that the parties did not intend to be bound without a formalized writing. *Id.*

### C. Defendants' Lack of Legal Representation and Language Assistance, and the Ambiguity of the Broken Chain of Emails Preclude Enforceability of the Alleged Settlement

Even if the broken email exchange were deemed to include all of the essential terms, it remains clear that the individual Defendant Barannikov did not provide any response or acknowledgement to Plaintiff's initial email, or to the subsequent email from counsel for Defendant ITG, which conveniently shifted responsibility to payment to the Domestic Defendant. *See Plaintiff's Ex.2.* Furthermore, even when Mr. Zuck did respond to Plaintiff's email, he did so only on behalf of Defendant Domestic, not Defendant Barannikov. *See Plaintiff's Ex 3.* This lack of mutual assent, combined with the absence of Defendant Barannikov response or sign of any intention to be bound and lack of any meaningful participation in the mediation, renders any purported settlement legally unenforceable against him.

In the case at hand, the Barannikov Defendants did not fully understand proceeding and its outcome. *See Aff.* ¶. Given the significant language barriers faced by the **Barannikov Defendants**, it is appropriate for this Court to evaluate the sufficiency of the translations provided to determine whether the requisite mutual accent to form a binding agreement was present, consistent with the approach taken by the court in Miok *Min v. Target Stores*, 553 F. Supp. 2d 218 (E.D.N.Y. 2008).

The *Miok Min* court was "concerned with the adequacy of [the plaintiff's] understanding of the proceedings, and her assent to the agreement, not simply whether she could communicate with her attorney." *Id.* at 220. While Mr. Zuck may have served as an informal interpreter, he

11

surely was formal serving in that capacity. Although the plaintiff in *Miok Min* selected her own translator, the court considered whether her selected translator had any formal training to adequately translate the settlement negotiations and legal discussions. *Id.*

6. **Plaintiff's Motion for Sanctions Is Without Merit and the Barannikov Defendants Should Not Be Penalized**

Defendants should not be punished for the mistakes of their former attorney. The Second Circuit has held that sanctions should be directed solely at the attorney, not the client, unless the client is directly complicit in the misconduct. *Wood v. Brosse U.S.A., Inc.*, 149 F.R.D. 44 (S.D.N.Y. 1993). In this case, Defendants Barannikov and Domestic Supply were not involved in, nor did they condone, the actions of their former attorney. As soon as they realized that Zuck was failing to properly represent them, they terminated his services and they sought to retain competent new counsel to rectify the situation.

In *Olive Group North America, LLC v. Afghanistan International Bank*, 2023 U.S. Dist. LEXIS 52024 (S.D.N.Y. 2023), the court reaffirmed that sanctions are directed at the attorney, and the client's liability should not extend to their attorney's procedural mistakes unless the client is directly complicit in the misconduct. Similarly, in *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124 (2d Cir. 2023), the court highlighted that sanctions are inappropriate where the attorney's conduct did not rise to the level of bad faith or improper purpose.

Former Attorney Zuck's conduct in this case did not involve bad faith or improper purpose. His failure to meet deadlines, miscommunication regarding settlement terms, and lack of preparation stem from his inexperience, not an intent to obstruct or delay the proceedings. As courts have consistently held, errors resulting from inexperience, such as those committed by Zuck, do not justify the imposition of sanctions. *Popat v. Levy*, 328 F. Supp. 3d 106 (S.D.N.Y. 2018).

12

The rule that the "sins of the lawyer are visited on the client" does not apply in the context of sanctions, especially where there is no evidence that the client participated in or condoned the attorney's misconduct. *Martin v. Giordano*, 185 F. Supp. 3d 339 (S.D.N.Y. 2016) (emphasis added). The court in *Martin* emphasized that the client does not share the same ethical obligations as their attorney and should not be punished for the attorney's errors unless the client was complicit in the conduct. Similarly, in *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124 (2d Cir. 2023), the court noted that sanctions under 28 U.S.C. § 1927 should not be imposed on a client unless the attorney's actions were completely unrelated to their professional role in representing the client.

Furthermore, as the court emphasized in *Popat v. Levy*, 328 F. Supp. 3d 106 (S.D.N.Y. 2018), the mere failure to meet deadlines or minor miscalculations by an attorney's office is not grounds for sanctions, especially where there is no evidence of bad faith or prejudice to the opposing party. In that case, the court declined to impose sanctions on the plaintiff despite a miscalculation by counsel's office, noting that the failure did not rise to the level of misconduct warranting sanctions. Similarly, Zuck's mistakes were the result of inexperience and miscommunication, not an intentional attempt to delay or obstruct the litigation.

Finally, in *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91 (2d Cir. 1997), the court reversed the imposition of sanctions under 28 U.S.C. § 1927 because the attorney did not receive proper notice of the conduct that was alleged to be sanctionable. The court emphasized that, under due process principles, an attorney must be given specific notice of the alleged misconduct and the standards by which that conduct will be evaluated before sanctions are imposed. This ensures that sanctions are not imposed arbitrarily or without proper procedural safeguards. In this case, however, since former attorney Zuck has been replaced, he is no longer in a position to be sanctioned for any

13

alleged misconduct. Therefore, there is no basis to impose sanctions against the Barannikov Defendants for the actions of their former attorney.

## VI. Conclusion

Co-Defendant/Cross-Claimant ITG Communications did not take a position with respect to the motion for sanctions. For the reasons set forth above, Defendants Barannikov and Domestic Supply respectfully request that the Court deny Plaintiff's motion for sanctions.

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2025, the within MEMORANDUM OF LAW was served in accordance with the Federal Rules of Civil Procedure and the Eastern District's Local Rules upon the following parties and participants via ECF:

Jason Mizrahi, Esq.

Levin-Epster