UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
DENIS FAKHURTDINOV,　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiff,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　-against-　　　　　　　　　　　　　　:　　**REPORT AND**
　　　　　　　　　　　　　　　　　　　　　　　:　　**RECOMMENDATION**
ITG COMMUNICATIONS, LLC, DOMESTIC　　　　　:
SUPPLY INC., and DANILA BARANNIKOV[1],　　　:　　24-CV-1696 (DG)(PK)
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendants.　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
---------------------------------------------------------------- X

**Peggy Kuo, United States Magistrate Judge:**

　　Denis Fakhurtdinov ("Plaintiff") brought this action against ITG Communications, LLC ("ITG"), Domestic Supply Inc. ("Domestic Supply"), and Danila Barannikov[1] (together with Domestic Supply, the "Domestic Supply Defendants") (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and Articles 6 and 19 of the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 *et seq*, 650 *et seq.* (*See* Compl., Dkt. 1.)

　　Plaintiff has moved for sanctions and to enforce a settlement among the parties ("Plaintiff's Motion," Dkt. 22; *see also* "Pl. Mem.," Dkt. 22-1.) ITG has also moved to enforce the settlement. ("ITG's Motion," Dkt. 23; *see also* "ITG Mem.," Dkt. 23-1.) (together with Plaintiff's Motion, the "Motions.") The Honorable Diane Gujarati referred the Motions to me for a report and recommendation. For the reasons stated below, I respectfully recommend that the Motions be granted in part and denied in part.

---

[1] Mr. Barannikov is the managing member of Domestic Supply. (Supplemental Declaration of Barannikov ("Barannikov Supp. Decl.") ¶ 1, Dkt. 34.)

1

## BACKGROUND

### I. Factual Background

The Complaint alleges that the Domestic Supply Defendants and ITG employed Plaintiff as a cable technician. (Compl. ¶ 6.) It further alleges that Defendants misclassified Plaintiff as an independent contractor, and that they violated the FLSA and NYLL by failing to (i) pay minimum and overtime wages and spread-of-hours pay, (ii) provide wage notices and wage statements, and (iii) pay timely wages. (*See id.* ¶¶ 73-107.)

The Domestic Supply Defendants deny these allegations. They argue that Domestic Supply entered into an "Independent Contractor Agreement" with Plaintiff, and that there was no employer-employee relationship because Plaintiff operated exclusively through Denis US LLC, a company that he owned. (Barannikov Supp. Decl. ¶¶ 12, 14; "Independent Contractor Agreement," Ex. B to Barannikov Supp. Decl., Dkt. 34-2.)

ITG also denies that it was Plaintiff's employer. ITG contends that it does not own and is not affiliated with Domestic Supply. (Declaration of Ray Paris ("Paris Decl.") ¶ 8.) Rather, Domestic Supply is its subcontractor who is "contractually obligated to defend, indemnify, and hold ITG harmless for all claims asserted against ITG in connection with the work performed by Domestic Supply." (*Id.* ¶ 7.) ITG further argues that it tendered its defense to Domestic Supply on June 28, 2024, pursuant to the agreement between them. (*Id.* ¶ 12.)

### II. Referral to Mediation

On June 26, 2024, the Court referred this matter to mediation at the parties' request.[2]

---

[2] On June 24, 2024, Plaintiff and ITG filed a Rule 26(f) report indicating that they wished to be referred to the EDNY Mediation Program. (Dkt. 18.) The Domestic Supply Defendants did not appear until June 25, 2024. (Dkt. 19.)

On September 26, 2024, Matthew Weinick was selected as mediator, and mediation was conducted on October 2, 2024, by video conference (the "Mediation"). (Sept. 26, 2024 Docket Entry.)

At the Mediation, Jason Mizrahi, Esq. ("Plaintiff's Counsel") appeared for Plaintiff. William Ng, Esq. and Matthew Capobianco, Esq. (collectively, "ITG's Counsel") appeared for ITG. ITG's vice president, Ray Paris, was also present. Steven Zuck, Esq. appeared for the Domestic Supply Defendants, and Mr. Barannikov was also present. (Declaration of Barannikov ("Barannikov Decl.") ¶¶ 10-12; Barannikov Supp. Decl. ¶ 4.)

### A. Plaintiff's Version of the Mediation

According to Plaintiff, at the Mediation, the parties negotiated and agreed to settle for $45,000. (Supplemental Declaration of Jason Mizrahi, Esq. ("Mizrahi Supp. Decl.") ¶ 16.) The parties also agreed and understood that the Domestic Supply Defendants would finance the entirety of the settlement payments. (*Id.* ¶ 18.) Mediator Weinick shared the same understanding. (*Id.*)

### B. ITG's Version of the Mediation

ITG contends that, prior to the Mediation, ITG's Counsel had several telephone discussions and email communication with Attorney Zuck regarding settlement. (Declaration of William Ng, Esq. ("Ng Decl.") ¶ 3; Declaration of Matthew Capobianco, Esq. ("Capobianco Decl.") ¶ 3.) During these discussions, ITG's Counsel and Attorney Zuck shared a mutual understanding that the Domestic Supply Defendants would be paying "100% of any settlement offer." (Ng Decl. ¶ 4; Capobianco Decl. ¶ 4.) Based on this understanding, Attorney Zuck exchanged offers and counteroffers with Plaintiff's Counsel without any involvement or approval from ITG. (Ng Decl. ¶ 4; Capobianco Decl. ¶ 4.)

During the Mediation, ITG maintained a "no pay" position. (Paris Decl. ¶¶ 17-18.) The other parties, as well as Mediator Weinick, were aware of ITG's position. (*Id.*) Mr. Paris did not authorize ITG's Counsel to make any settlement offers during the Mediation, and ITG did not make any offers. (*Id.* ¶ 18; Ng Decl. ¶¶ 5, 10; Capobianco Decl. ¶¶ 5, 10.) Mediator Weinick, thus, periodically updated

3

ITG's Counsel and Mr. Paris on the status of the negotiations between Plaintiff and the Domestic Supply Defendants. (Ng Decl. ¶ 9; Capobianco Decl. ¶ 9.)

At some point during the Mediation, ITG's Counsel and Mr. Paris learned from Mediator Weinick that a settlement in principle was reached by Plaintiff and Domestic Supply, with no contribution required from ITG. (Ng Decl. ¶ 12; Capobianco Decl. ¶ 12; Paris Decl. ¶ 20.)

### C. Domestic Supply Defendants' Version of the Mediation

Mr. Barannikov states that, at the Mediation, he "discussed only one figure $5,000" because he had previously withheld a $5,230 payment from Plaintiff's company, Denis US LLC, due to property damage caused by Plaintiff while servicing a client. (Barannikov Supp. Decl. ¶ 5.) Mr. Barannikov never agreed to settle this case for any amount greater than $5,000, nor did he authorize Attorney Zuck to agree to a settlement agreement under which Domestic Supply would be solely responsible for paying $45,000 to Plaintiff. (Barannikov Supp. Decl. ¶ 3; *see also* Barannikov Decl. ¶ 18.)

During the Mediation, Mr. Barannikov was informed by Attorney Zuck that any settlement amount beyond $5,000 would be covered by ITG. (Barannikov Supp. Decl. ¶ 7; *see also* Barannikov Decl. ¶ 12.) Because Mr. Barannikov did not receive or sign any written settlement agreement, he understood any agreement reached at the Mediation to be non-binding absent his written approval. (Barannikov Decl. ¶ 10; Barannikov Supp. Decl. ¶ 9.)

Mr. Barannikov states that he has difficulty understanding English, and he partially relied on Attorney Zuck's translations and explanations during the Mediation. (Barannikov Decl. ¶ 9; Barannikov Supp. Decl. ¶ 4.)

Attorney Zuck did not file an affidavit regarding the Mediation.

**III.     The Parties' Post-Mediation Communication**

The Mediation concluded at approximately 3:00 p.m.  (Ng Decl. ¶ 7; Capobianco Decl. ¶ 7.) At 3:10 p.m., Plaintiff's Counsel sent the following email to ITG's Counsel, Attorney Zuck, and Mediator Weinick:

> Cousnel [sic] / Mediator Weinick,
>
> To memorialize the outcome of today's mediation, the parties have agreed to resolve this action for a total of $45,000, structured as follows:
>
> 1.  $45,000 payable as follows:
>
>     a. $15,000 payable via wire transfer or certified check on or before November 1, 2024;
>
>     b. $15,000 payable via wire transfer or certified check on or before December 1, 2024; and
>
>     c. $15,000 payable via wire transfer or certified check on or before December 31, 2024.
>
> 2.  Payments 1(a) – 1(c) to be made directly to Defendant(s)' counsel's escrow account.
>
> 3.  The filing of the disposition of the matter via *Cheeks*, will be made only upon Defendants' counsel's receipt of the full settlement payment (*i.e.,* the motion for *Cheeks* approval will not be filed until, on or around, December 31, 2024).
>
> Kindly confirm receipt of this email.
>
> Best,
> Jason Mizrahi

("Plaintiff's Oct. 2 Email," Ex. B to Mizrahi Supp. Decl., Dkt. 30-2.)

At 3:26 p.m., Mediator Weinick responded to Plaintiff's Oct. 2 Email:

> It was a pleasure working with you all and I'm glad the parties were able to reach an agreement.
>
> Attached is an invoice for mediation services. Please note that if paying by check, you may send checks to my office, but they should be payable to me personally, not to my firm. Thank you.

5

(Ex. C to Mizrahi Supp. Decl., Dkt. 30-3.)

On October 3, 2024, at 8:31 p.m., Attorney Capobianco responded to Plaintiff's Oct. 2 Email and confirmed the terms set forth therein, but clarified that "all settlement payments will be made directly by Domestic Supply to Plaintiff," and that "ITG will not be making a payment":

> On behalf of Defendant ITG, we can confirm paragraphs 1(a) through 1(c) and 2 below, except clarify that all settlement payments will be made directly by Domestic Supply to Plaintiff and/or your firm. ITG will not be making a payment to Plaintiff or your firm. As for paragraph 3, we take no position and defer to Domestic Supply as to their preference.

(Ex. D to Mizrahi Supp. Decl., Dkt. 30-4.) Attorney Zuck, Mediator Weinick, and Attorney Ng were copied on this email. (*Id.*)

On October 7, 2024, at 2:32 p.m., Attorney Zuck responded to Plaintiff's Oct. 2 Email—not the email from Attorney Capobianco—as follows:

> Good afternoon Jason,
>
> On behalf of Defendant Domestic Supply, we confirm paragraphs 1-3.
>
> Thank you,
> Steven

(Ex. E to Mizrahi Supp. Decl., Dkt. 30-5.)

On or about October 10, 2024, Mr. Paris received from ITG's Counsel a copy of the draft long-form settlement agreement, which provided that Domestic Supply would make all settlement payments to Plaintiff. (Paris Decl. ¶ 21.) On October 14, 2014, ITG's Counsel informed Plaintiff's Counsel that they had sent the draft long-form settlement agreement to the Domestic Supply Defendants for review. (Declaration of Jason Mizrahi, Esq. ("Mizrahi Decl.") ¶ 7.)

On October 15, 2024, a Report of Mediation Settled was filed on the docket, informing the Court that the parties had reached a settlement.

On November 5, 2024, Plaintiff's Counsel filed a letter stating that Domestic Supply had not responded to multiple emails regarding the draft long-form settlement agreement. ("Nov. 5 Letter,"

6

Dkt. 21.) The Court directed Plaintiff "to contact the mediator to discuss resolution of the dispute between the parties." (Nov. 8, 2024 Order.) There is no indication he did so.

On November 13, 2024, Attorney Zuck informed the parties that "Domestic [S]upply will not be moving forward with settlement at this time." ("Nov. 13 Email," Ex. D to Mizrahi Decl. at 3, Dkt. 22-6.)

On or around December 5, 2024, Mr. Paris spoke with Mr. Barannikov regarding this action. (Paris Decl. ¶ 23.) During that conversation, Mr. Barannikov stated that "he was trying to avoid the prior settlement agreement because he was afraid that other Domestic Supply technicians would bring a similar claim against him because of his agreement to pay Plaintiff monetary compensation in this action." (*Id.*)

Plaintiff's Motion and ITG's Motion were filed on December 9 and 13, 2024, respectively. (Dkts. 22, 23.) The Domestic Supply Defendants opposed the Motions on January 10, 2025. ("Opposition," Dkt. 27.)

On December 27, 2024, Denis Vorontsov, Esq. was substituted as counsel for the Domestic Supply Defendants.

On June 12, 2025, the Court granted the parties leave to supplement their filings on the issue of whether the parties agreed at the Mediation to Domestic Supply paying the full settlement amount without any contribution from ITG. The Court also directed the parties to consult with Mediator Weinick to reconstruct what happened at the Mediation, if necessary.

On June 17, 2025, Plaintiff's Counsel had a telephone discussion with Attorney Ng and Mediator Weinick. (Mizrahi Supp. Decl. ¶ 35.) During the discussion, Attorney Ng and Mediator Weinick confirmed that "the Domestic Supply Defendants were going to be financing the entirety of the settlement payments." (*Id.* ¶ 36.)

The parties supplemented their filings on June 26, 2025. (Dkts. 30, 31, 32, 33, 34.)

## DISCUSSION

### I. Plaintiff's and ITG's Requests to Enforce the Settlement

"The party seeking to enforce a purported settlement agreement bears the burden of proving that such a binding and enforceable agreement exists." *Grgurev v. Licul*, No. 15-CV-9805 (GHW), 2016 WL 6652741, at *3 (S.D.N.Y. Nov. 10, 2016). "A settlement agreement amounts to a contract and is enforceable as such." *Curran v. All Waste Sys., Inc.*, 213 F.3d 625, 625 (2d Cir. 2000). In general, "parties are free to enter into a binding contract without memorializing their agreement in a fully executed document." *Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).

#### A. Whether the Parties Entered into a Binding Settlement Agreement at the Mediation

The Second Circuit considers the following factors to determine whether the parties intended to be bound by a purported settlement agreement in the absence of a formal written agreement: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Winston*, 777 F.2d at 80.

##### 1. Express Reservation of Right

The Domestic Supply Defendants assert that the "absence of a signed agreement indicates an implied reservation of the right not to be bound." (Opposition at 8.) They cite no case law in support of that assertion, however, and courts have rejected similar arguments. *See, e.g.*, *Aguiar v. New York,* No. 06-CV-3334 (THK), 2008 WL 4386761, at *5 (S.D.N.Y. Sept. 25, 2008) ("[S]imply because the parties contemplated that the agreement would be reduced to writing does not indicate that they had agreed, either explicitly or implicitly, not to be bound until a written agreement was signed."), *aff'd,* 356 F. App'x 523 (2d Cir. 2009); *Winston,* 777 F.2d at 80 ("[T]he mere intention to commit the agreement to writing will not prevent contract formation prior to execution.").

Mr. Barannikov also states in his Declarations that he "believed" and "underst[ood]" any agreement reached at the Mediation not to be binding unless he signed a written agreement. (Barannikov Decl. ¶ 10; Barannikov Supp. Decl. ¶ 9.) Other than Mr. Barannikov's subjective belief and understanding, however, there is no objective evidence, either orally or in writing, that he or Attorney Zuck expressly or impliedly reserved the right not to be bound in the absence of a written agreement.

The lack of any such objective evidence weighs in favor of enforcing the settlement. *See, e.g., Am. Home Assurance Co. v. Cent. Transp. Int'l, Inc.,* 354 F. App'x 499, 500 (2d Cir. 2009) (summary order) (finding that this factor weighed in favor of enforcement where there was "no *objective* evidence that either party expressly or impliedly reserved the right not to be bound by their oral agreement") (emphasis in original); *Aguiar*, 2008 WL 4386761, at *5-*6 (finding that "the first *Winston* factor supports enforcing the oral settlement agreement" because there was "no express reservation of the right not to be bound").

### 2. **Partial Performance**

"Courts consider acts such as payment of the settlement amount, giving instructions for how to make payment, preparation, signing and delivering a stipulation of discontinuance to opposing counsel, or carrying out other terms of settlement as evidence of partial performance." *Geneva Lab'ys Ltd. v. Nike W. Afr. Imp. & Exp. Inc.*, No. 19-CV-4419 (EK)(RER), 2021 WL 7287611, at *6 (E.D.N.Y. Aug. 16, 2021) (collecting cases), *R&R adopted*, 2022 WL 673257 (E.D.N.Y. Mar. 7, 2022).

There has been no partial performance by any party. Thus, this factor is neutral. *See Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, No. 04-CV-1621 (KMW), 2005 WL 1377853, at *8 (S.D.N.Y. June 9, 2005) (finding second *Winston* factor to be neutral where there was no partial performance due to repudiation of settlement agreement); *see also Case v. City of New York*, No. 12-CV-2189 (AJN)(AJP), 2012 WL 5951296, at *6 (S.D.N.Y. Nov. 28, 2012).

9

### 3. **Whether All Material Terms Have Been Agreed Upon**

The third *Winston* factor requires the consideration of whether the parties have agreed on "all material terms." *Ciaramella v. Reader's Dig. Ass'n, Inc.*, 131 F.3d 320, 325 (2d Cir. 1997). Courts generally find that the settlement amount is the most important term of a settlement agreement. *See Geneva*, 2021 WL 7287611, at *7. Where multiple defendants are involved, each defendant's respective share of the settlement amount is equally important.

Plaintiff and ITG contend that Domestic Supply agreed to bear sole responsibility for the $45,000 settlement payments. (Mizrahi Supp. Decl. ¶ 18; Ng Decl. ¶ 12; Capobianco Decl. ¶ 12; Paris Decl. ¶ 20.) The Domestic Supply Defendants do not dispute that the parties agreed at the Mediation that Plaintiff would be paid $45,000. Indeed, ITG's Counsel's and Attorney Zuck's responses to Plaintiff's Oct. 2 Email confirm the parties' agreement on the total amount to be paid to Plaintiff. (Dkts. 22-4, 22-5.)

The Domestic Supply Defendants assert, however, that the parties agreed that Domestic Supply would only pay $5,000, with ITG paying any settlement amount beyond $5,000. (Barannikov Suppl Dec. ¶ 7.) I find the Domestic Supply Defendants' characterization of the agreement to be unpersuasive for several reasons.

First, the Domestic Supply Defendants do not dispute that ITG tendered its defense to Domestic Supply pursuant to the agreement between them, nor do they argue that the tender was rejected. (Paris Decl. ¶ 12.) Because Domestic Supply accepted ITG's tender, ITG would no longer have a risk of loss in this litigation. ITG's "no pay" position during the Mediation and Mediator Weinick's conduct in getting offers from the Domestic Supply Defendants, and not ITG, are consistent with ITG's contention that it was not obligated to and did not agree to pay any amount in settlement.

Second, in his response to Plaintiff's Oct. 2 Email, Attorney Capobianco clarified the terms described in Plaintiff's Oct. 2 Email by stating that "all settlement payments will be made directly by Domestic Supply," and that "TTG will not be making a payment to Plaintiff . . . ." (Ex. B to Mizrahi Decl., Dkt. 22-4.) Attorney Zuck did not likewise clarify who would be making the payment in his response to Plaintiff's Oct. 2 Email, as Attorney Capobianco did, nor did he correct Attorney Capobianco's email to state that any settlement amount beyond $5,000 would be covered by ITG. Instead, he simply confirmed the terms set forth in Plaintiff's Oct. 2 Email, which did not specify who would be paying.

Third, when ITG sent the Domestic Supply Defendants a copy of the draft long-form settlement agreement, which required Domestic Supply to make all settlement payments to Plaintiff (Nov. 5 Letter), Attorney Zuck again did not clarify that Domestic Supply was only responsible for $5,000. Rather, after not responding to inquiries, he informed the other parties that the settlement would not be moving forward at all. (Nov. 13 Email.)

Finally, I credit Plaintiff's Counsel's statement that Mediator Weinick confirmed during a phone call with him and Attorney Ng on June 17, 2025, that the Domestic Supply Defendants agreed to pay the entire settlement amount. (Mizrahi Supp. Decl. ¶¶ 35-36.) I also credit Mr. Paris's statement that Mr. Barannikov told him in December 2024 that he "was trying to avoid the prior settlement" (Paris Decl. ¶ 23), which suggests that Mr. Barannikov was trying to back out of the settlement agreement that he had previously agreed to.

These facts support a finding that the parties agreed at the Mediation for Domestic Supply to pay the full $45,000 to Plaintiff in three installments, without any contribution from ITG. There is no other material term that remains outstanding, and this factor weighs in favor of enforcing the settlement. *See Ciaramella*, 131 F.3d at 325.

11

### 4. Usually Committed to a Writing

In considering whether this agreement was of the type usually committed to writing, "courts have considered both the amount of money at stake as well as the magnitude and complexity of the deal." *Est. of Andrea Brannon v. City of New York*, No. 14-CV-2849 (AJN), 2016 WL 1047078, at *3 (S.D.N.Y. Mar. 10, 2016).

Considering the relative simplicity of the matter and the straightforward agreement that the parties reached at the Mediation, *i.e.,* payment of $45,000 in three installments, I do not find the agreement to be the kind that is usually committed to writing. *See Xie v. Caruso, Spillane, Leighton, Contrastano, Savino & Mollar, P.C.*, 632 F. Supp. 3d 262, 269 (S.D.N.Y. 2022) (finding that lump-sum $55,000 settlement was not the kind of agreement that needed to be memorialized in writing). Thus, this factor also weighs in favor of enforcing the settlement.

After weighing the four *Winston* factors, I find that the parties intended to be bound by the agreement they reached at the Mediation.

### B. The Domestic Supply Defendants' Arguments against Enforcement of the Settlement Agreement

The Domestic Supply Defendants nevertheless contend that the settlement agreement is not binding because Attorney Zuck had no settlement authority beyond $5,000. (Opposition at 6-7.)

Although "the decision to settle a case rests with the client alone," *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, AFL-CIO, 986 F.2d 15, 19 (2d Cir. 1993), "because of the unique nature of the attorney-client relationship, and consistent with the public policy favoring settlements, [courts] presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so." *In re Artha Mgmt., Inc.*, 91 F.3d 326, 329 (2d Cir. 1996). A party challenging an attorney's authority to settle the case bears the burden of proving by "clear evidence" that the attorney lacked authority. *See id.* at 330; *see also Hillair*, 640 F. App'x at 52.

12

The Domestic Supply Defendants fail to offer clear evidence that Attorney Zuck lacked authority to settle for any amount greater than $5,000. It is undisputed that Mr. Barannikov was present and communicated with Attorney Zuck throughout the Mediation, during which Attorney Zuck exchanged settlement offers with Plaintiff's Counsel and agreed to the settlement terms. Although Mr. Barannikov states that he was not "physically present" with Attorney Zuck during the Mediation (Barannikov Supp. Decl. ¶ 4), he was, in fact, present by video, along with all other participants. It is also undisputed that the parties agreed at the Mediation to settle for $45,000, and that Domestic Supply is contractually obligated to defend and indemnify ITG. These facts strongly support the conclusion that Attorney Zuck had authority to settle the matter on behalf of Domestic Supply for $45,000. *See, e.g.*, *Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 175 (E.D.N.Y. 2006) (finding that attorney had authority to settle because she attended mediation, provided representation to client, and signed settlement agreement).

Moreover, "if an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt that authority, the settlement will be upheld." *Teamsters*, 986 F.2d at 19 (quoting *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989)). "Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Hillair Cap. Invs., LP v. Smith Sys. Transp., Inc.*, 640 F. App'x 49, 52 (2d Cir. 2016) (quoting *Hallock v. State*, 474 N.E.2d 1178, 1181 (N.Y. 1984)). Thus, the principal's silence may create apparent authority "when he had the opportunity of speaking and when he knew or ought to have known that his silence would be relied upon." *Id.*; *Villar v. City of New York*, 546 F. Supp. 3d 280, 287 (S.D.N.Y. 2021); *see also* Restatement (Third) of Agency § 1.03 cmt. b (2006) ("Silence may constitute a manifestation when, in light of all the circumstances, a reasonable person would express dissent to the inference that other persons will draw from silence.").

13

There is no evidence in the record that Mr. Barannikov informed the other parties that he did not agree to pay any amount beyond $5,000, or that ITG should bear primary responsibility for the settlement payments. Even if Mr. Barannikov had such a subjective understanding, he "ought to have known that his silence would be relied upon" by other parties under such circumstances. *Hillair*, 640 F. App'x at 52. Thus, at the very least, Attorney Zuck had apparent authority to settle for $45,000.

The Domestic Supply Defendants make an alternative argument that, even if Attorney Zuck had apparent authority to bind Domestic Supply, he did not have authority to bind Mr. Barannikov, who is a "necessary party" to the settlement agreement. (Opposition at 6-7.) Specifically, they argue that counsel had no authority to bind Mr. Barannikov because Attorney Zuck only agreed "[o]n behalf of Defendant Domestic Supply" in responding to Plaintiff's Oct. 2 Email, and Mr. Barannikov was "entirely unaware of the communication exchanged between the attorneys." (*Id.*) This argument lacks merit. The settlement agreement only obligates Domestic Supply, not Mr. Barannikov individually, to pay $45,000. Moreover, because the parties already reached an agreement at the Mediation, whether Mr. Barannikov was copied on subsequent emails exchanged between counsel is irrelevant.

Finally, the Domestic Supply Defendants argue that the settlement agreement is not binding because he did not fully understand the discussions at the Mediation due to language barriers and, therefore, there was no meeting of the minds among the parties. (Opposition at 7, 11-12.) This argument is inapposite. Mr. Barannikov does not state in his Declarations that the translations and explanations that Attorney Zuck provided him were inadequate, that he did not understand the discussions that took place during the Mediation, or that he requested a professional interpreter. In any event, there is no indication, as discussed above, that Attorney Zuck did not have authority as the Domestic Supply Defendants' counsel to enter into the settlement agreement on behalf of his clients.

14

Based on the foregoing, I find that the parties entered into a binding settlement agreement during the Mediation: that Domestic Supply pays $45,000 to Plaintiff, pursuant to the payment structure memorialized in Plaintiff's Oct. 2 Email. Accordingly, I respectfully recommend that the Court grant Plaintiff's and ITG's requests to enforce the settlement reached at the Mediation.[3]

## II.     Plaintiff's Motion for Sanctions

Plaintiff requests sanctions pursuant to 28 U.S.C. § 1927, asserting that "the Domestic Supply Defendants have unreasonably and vexatiously multiplied the proceedings" by refusing to consummate the settlement agreement. (Pl. Mem. at 10.)

Under 28 U.S.C. § 1927, the Court may impose sanctions on an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." The Court may also sanction a party or counsel under its inherent powers "for conduct which abuses the judicial process." *Chen v. Thai Greenleaf Rest. Corp.*, No. 21-CV-1382 (MKB)(JMW), 2023 WL 2731712, at *4 (E.D.N.Y. Mar. 31, 2023) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). "A party seeking sanctions under either 28 U.S.C. § 1927 or the Court's inherent authority must provide 'clear evidence that (1) the offending party's claims were entirely without color, *and* (2) the claims were brought in bad faith— that is, motivated by improper purposes such as harassment or delay.'" *Clean Air Car Serv. & Parking Branch Three, LLC v. Clean Air Serv. & Parking Branch Two, LLC*, No. 24-CV-5444 (OEM), 2025 WL 1005838, at *1 (E.D.N.Y. Apr. 3, 2025) (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)) (emphasis in original).

---

[3] Enforcement of the settlement effectively ends the litigation, except for the requirement that the parties must file a motion for settlement approval pursuant to *Cheeks v. Freeport Pancake House,* 796 F.3d 199 (2d Cir. 2015), thus foreclosing the relief Mr. Barannikov seeks in his Supplemental Declaration, including (1) permission to file an Answer and assert affirmative defenses, (2) permission to engage in dispositive motion practice, (3) dismissal of all claims against him for lack of service, and (4) permission to implead Denis US LLC as a necessary party. (Barannikov Supp. Decl. ¶ 18.)

While unpersuasive, I do not find that the arguments the Domestic Supply Defendants made in the Opposition were "entirely without color," or that they were made in bad faith, so as to warrant sanctions. Accordingly, I respectfully recommend that Plaintiff's request for sanctions be denied.

## **CONCLUSION**

For the foregoing reasons, I respectfully recommend that the Court grant Plaintiff's and ITG's requests to enforce the settlement agreement that was reached during the Mediation: that Defendant Domestic Supply pays $45,000 to Plaintiff, pursuant to the payment structure memorialized in Plaintiff's Oct. 2 Email. I further recommend that the Court deny Plaintiff's request for sanctions.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         August 29, 2025

16