**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------

DENIS FAKHURTDINOV, *on behalf of himself*
*and others similarly situated in the proposed FLSA*
*Collective Action*,

      Plaintiff,

  -v-

ITG COMMUNICATIONS, LLC, DOMESTIC
SUPPLY INC., and DANILA BARANNIKOV,

      Defendants.


--------------------------------------------------------------------

Case No. 24-cv-01696 (DG)(SJB)


**DEFENDANT DOMESTIC SUPPLY INC.'s**
**RULE 72(b)(2) OBJECTIONS**
**TO REPORT AND RECOMMENDATION**

Denis Vorontsov, Esq.
Vorontsov Law Firm, PLLC
1599 E. 15th Floor, 4th Floor
Brooklyn, NY 11230
Tel: (212) 295-5838
Email: dv@vlf.law

*Attorney for Defendants*
*Domestic Supply Inc,*
*and Danila Barannikov*

1

## Table of Contents

*TABLE OF AUTHORITIES* ........................................................... 3

*PRELIMINARY STATEMENT* ..................................................... 4

*STANDARD OF REVIEW* ........................................................... 5

*DEFENDANT'S DOMESTIC SUPPLY OBJECTIONS* ........................ 6

   **I. R&R Erred in Ignoring the Lack of Proper Service on the Domestic Supply Defendants, Which Deprives the Court of Personal Jurisdiction** ........................................ 7

   **B. Service Defects Were Preserved and Not Waived** ........................................ 9

   **II. The R & R Erred Because There Was No Agreement on All Material Terms (Winston Factor Three)** ........................................................... 10

   **A. Fragmented Emails Left Allocation Unresolved** ........................................ 11

   **III. No Express Intent to Be Bound Until Signed Writing (*Winston* Factor One)** .................... 13

   **III.   Winston Factor Four and Cheeks Require a Written, Court-Approved Agreement** ....... 15

   **IV.   The Fact that there Was No Partial Performance Should Weigh in Defendant's Favor** ..17

   **V.   Counsel Exceeded Limited Authority, and Domestic Supply Never Accepted ITG's Tender** ........................................................................ 17

   **VI.   Plaintiff's Vexatious Litigation and Defendants' Meritorious Defenses** .................... 19

*CONCLUSION* ................................................................... *20*

# TABLE OF AUTHORITIES

**CASES**

777 F.2d 78, 82 (2d Cir. 1985) ...............................................................................................16

Carney v. Metropolitan Transp. Auth., 221 A.D.3d 447, 448 (1st Dep't 2023)................................9, 10

Cassano v. Altshuler, 186 F. Supp. 3d 318, 322 (S.D.N.Y. 2016) ...........................................10

Cassano v. Altshuler, 186 F. Supp. 3d 318, 323 (S.D.N.Y. 2016) ............................................9

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015)....................................15

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 205–06 (2d Cir. 2015) ......................14

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015)............................15

*Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 323 (2d Cir. 1997)..................................14

*Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997) .........................12

*Ciaramella*, 131 F.3d at 323.....................................................................................................12

*Est. of Andrea Brannon v. City of New York*, No. 14-CV-2849 (AJN), 2016 WL 1047078 ...................15

Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989) ..................................................18

Hallock v. State, 64 N.Y.2d 224, 231 (1984)..........................................................................18

Herbert Constr. Co. v. Continental Ins. Co., 931 F.2d 989, 993 (2d Cir. 1991) .....................18

*Id.* 5

*In re Artha Mgmt., Inc.*, 91 F.3d 326, 330 (2d Cir. 1996) ......................................................17

Lynch v. Lynch, 122 A.D.2d 572, 573 (4th Dep't 1986) .........................................................18

*Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) .......................................6

Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) .....................10

Orix Fin. Servs., Inc. v. Cline, 369 F. App'x 174, 175 (2d Cir. 2010) .....................................9

*Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012) ...................................6

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998) ......................................10

*United States v. Raddatz*, 447 U.S. 667, 673–74 (1980) ...........................................................5

Vidurek v. Koskinen, 789 F. App'x 889, 890 (2d Cir. 2019).....................................................9

Vidurek v. Koskinen, 789 F. App'x 889, 892 (2d Cir. 2019).....................................................10

Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R.L. De C.V., 147 F.4th 73, 80 (2d Cir. 2023) ....18

Winston v. Mediafare Ent. Corp., 777 F.2d 78, 82–83 (2d Cir. 1985) ...........................12, 14

*Xie v. JPMorgan Chase Short-Term Disability Plan*, No. 15-CV-4546, 2017 WL 2462675 ................15

**STATUTES**

28 U.S.C. § 636(b)(1)(C) .........................................................................................................5

28 U.S.C. §636(b)(1)(C)...........................................................................................................3

Fed. R. Civ. P. 12(b)(2) and (5).................................................................................................8

Federal Rules of Civil Procedure 4(l)(1) and 4(m) ...................................................................9

Rule 4(e)(2) ..............................................................................................................................10

**RULES**

Rule 12(h)(1) .............................................................................................................................9

## PRELIMINARY STATEMENT

Defendants Danila Barannikov and Domestic Supply Inc. (the "Domestic Supply Defendants"), respectfully submit these objections pursuant to Federal Rule of Civil Procedure ("FRCP") 72(b)(2) and 28 U.S.C. §636(b)(1)(C) to the Report and Recommendation ("R&R") issued by Magistrate Judge Peggy Kuo on August 29, 2025 (ECF No. 35). For the reasons set forth below and, in the record, already before the Court, the R&R should not be adopted on the discrete issue of enforcing an alleged $45,000 mediation "settlement" against Domestic Supply, Inc.

At the threshold, this Court lacks personal jurisdiction over the Domestic Supply Defendants because they were never properly served. That objection to the defective service, repeatedly preserved in sworn declarations and filings must be decided before any merits determination.  Independently, even assuming arguendo that jurisdiction existed, the record does not establish a binding agreement under the Second Circuit's Winston framework, especially when read in tandem with the FLSA-specific requirements of Cheeks. The R&R examined a broken chain of emails between counsel to determine if a binding agreement was memorialized, however, contrary to the Courts findings, that inconsistent email exchanges actually shows no meeting of the minds on material terms (including allocation of payment responsibility). Moreover, there was no partial performance, and the objective context shows the parties did not intend to be bound absent a signed writing submitted for judicial approval. Further, former counsel lacked actual or apparent authority to bind these defendants beyond a limited amount, and significant language barriers undermined any claim of informed assent.

Enforcing disputed, unsigned, post-mediation emails to impose sole responsibility on Domestic Supply would bypass Cheeks safeguards and raise serious due-process concerns, particularly where service has not been affected and the Domestic Supply Defendants were

deprived of a meaningful opportunity to assert defenses or conduct discovery. The appropriate course is to reject the recommendation to enforce, deny Plaintiff's motion, and permit the Domestic Supply Defendants to file their Answer and assert all available defenses and proceed to trial. At minimum, the Court should order an evidentiary hearing.

Defendants incorporate by reference their prior submissions, including: the Memorandum of Law in Opposition to Enforcement of the Settlement (ECF No. 27, 1-4), the Barannikov Declaration (ECF No. 27-1), the Vorontsov Declaration (ECF No. 27-2), the Supplemental Barannikov Declaration (ECF No. 34), Exhibits (ECF No. 34 1-3), and the June 26, 2025 letter to the Court (ECF No. 34-4).

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1)(C), a party may file objections to a magistrate judge's proposed findings and recommendations within fourteen days after being served. The district judge must then "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). In conducting its review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," and it "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *United States v. Raddatz*, 447 U.S. 667, 673–74 (1980).

The district court's review is not perfunctory. The Supreme Court has made clear that a district judge must "make his own determination on the basis of the record" and is not bound by the magistrate's findings. *Id.* at 675. The Second Circuit likewise holds that a party is "entitled to *de novo* review as to those issues" properly objected to. *Peterson v. Syracuse Police Dep't*, 467

F. App'x 31, 33 (2d Cir. 2012) (summary order). At the same time, objections must be specific and direct the Court to alleged errors of fact or law; "[m]erely referring the court to previously filed papers or arguments does not constitute an adequate objection." *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002).

This case warrants careful *de novo* review because the R&R overlooked threshold jurisdictional defects and resolved sharply disputed factual issues on the papers, without an evidentiary hearing, contrary to established precedent. The objections that follow are based on specific portions of the record, including: (1) the Affidavit of Non-Service filed April 9, 2024 (ECF No. 12); (2) sworn declarations of Mr. Barannikov denying service and authorization of any $45,000 settlement (ECF No. 27 ¶¶ 2–3, 7; ECF No. 34 ¶¶ 2–4, 7); (3) undersigned counsel's declaration preserving jurisdictional defenses (ECF No. 27-2 ¶ 4); and (4) the fragmented October 2024 email exchanges (ECF Nos. 22-3, 22-4, 22-5, 22-6).

Because these objections go to both legal errors (misapplication of *Winston* and *Cheeks*) and disputed factual matters (service, allocation of payment responsibility, counsel's authority), the R&R cannot be adopted without full *de novo* review.

## DEFENDANT'S DOMESTIC SUPPLY OBJECTIONS

Defendant Domestic Supply respectfully submits the following objections to the Report and Recommendation ("R&R") issued by Magistrate Judge Peggy Kuo on August 29, 2025 (ECF No. 35), which recommends enforcement of an alleged $45,000 settlement agreement against Defendant Domestic Supply Inc. Respectfully, the recommendation should not be adopted for the following reasons:

**I. R&R Erred in Ignoring the Lack of Proper Service on the Domestic Supply Defendants, Which Deprives the Court of Personal Jurisdiction**

**A. The Record Confirms that Neither Domestic Supply Defendant Was Served**

The first and most fundamental objection is that Plaintiff never properly served either Barannikov or Domestic Supply, depriving this Court of personal jurisdiction. There is no affidavit of service on file for Domestic Supply, and the only filing involving the Barannikov Defendants is an Affidavit of Non-Service stating that service on Mr. Barannikov at "126A West End Avenue, Brooklyn" failed because "NO SUCH ADDRESS AS 126A EXISTS. SERVICE ATTEMPTED AT 126 BUT SUBJECT IS NOT KNOWN." (Affidavit of Non-Service, ECF No. 12).

No other affidavit of service for Mr. Barannikov has ever been filed. Similarly, no valid affidavit of service has ever been filed for Domestic Supply. By contrast, the docket contains service affidavits only for ITG Communications (ECF Nos. 7–9), and the summons on the docket "issued to Mr. Barannikov" contains a blank proof of service page (ECF No. 4).

Mr. Barannikov confirmed under oath that he was never served: "*I have not been personally served with the Complaint in this case. I have not yet had an opportunity to file a formal Answer or a motion to dismiss. I have also not participated in discovery or been permitted to assert defenses prior to Plaintiff's filing of this motion*." (Barannikov Sup. Decl. ¶ 2, ECF No. 34). He further explained that he "*was never served with process and did not review the pleadings, or meaningfully discuss the case prior to the [mediation] session*." (Id. ¶ 4, ECF No. 34).

In his Declaration of January 10, 2025, Mr. Barannikov stated: "*I reviewed the Complaint with Mr. Zuck, denied all the allegations and provided him with supporting documents and evidence to support my position…. I assumed that Mr. Zuck would manage my case and file the necessary paperwork, including an Answer and Affirmative Defenses, to defend my interests in a timely manner.*" (Barannikov Decl. ¶¶ 7–8, ECF No. 27-1). Moreover, he expressly instructed prior

7

counsel to file an Answer and assert defenses, but those instructions were ignored: "*I have recently learned that he failed to file a timely Answer, assert Affirmative Defenses, respond to the crossclaims from Defendant ITG or file a Motion to Dismiss this case.*" (Id. ¶ 15). These sworn statements confirm both the lack of service and the fact that Barannikov expected his former counsel to raise the defenses.

Undersigned counsel's declaration corroborated this: "*Upon reviewing the docket and all known filings, I discovered that the Barannikov Defendants had not filed an Answer or raised Affirmative Defenses, despite their express request to former counsel. The Barannikov Defendants had no intention of defaulting in this case and deny the allegations in both the Complaint and the Crossclaims.*" (Vorontsov Decl. ¶ 4, ECF No. 27-2).

The same point was expressly preserved in Defendants' June 26, 2025 letter to the Court: "*Additionally, we respectfully submit that this Court has not yet acquired personal jurisdiction over either Mr. Barannikov or Domestic Supply Inc., as proper service under Fed. R. Civ. P. 4 has not been effected. The Affidavit of Non-Service filed on April 9, 2024 (ECF No. 12) reflects that service on Mr. Barannikov was attempted at an incorrect and non-existent address and was unsuccessful. To date, no valid affidavit of service has been filed for Domestic Supply Inc. (ECF No. 27-2). Importantly, as set forth in that declaration, the Barannikov Defendants expressly instructed prior counsel to file an Answer and assert affirmative defenses. They never intended to default and continue to deny the allegations in both the Complaint and the Crossclaims. Their lack of response was not a waiver but a result of prior counsel's inaction. Accordingly, the Barannikov Defendants expressly preserve and do not waive any defenses under Fed. R. Civ. P. 12(b)(2) and (5).*" (Letter to Court, ECF No. 34-4).

Despite this record, the R&R acknowledged only in a footnote that enforcement would "foreclose the relief Mr. Barannikov seeks … including dismissal of all claims against him for lack of service" (R&R at n.3), but it did not resolve the jurisdictional defect or address the alternative relief the Domestic Supply Defendants requested. Respectfully, this sidestepped a threshold due-process issue.

## B. Service Defects Were Preserved and Not Waived

These service defects were not waived. Rule 12(h)(1) provides that defenses of insufficient service of process or lack of personal jurisdiction are preserved when timely asserted. The Barannikov Defendants consistently and expressly preserved these defenses in sworn declarations (ECF No. 27-1 ¶¶ 7–8, 15; ECF No. 34 ¶¶ 2, 4) and in counsel's filings (ECF No. 27-2 ¶ 4; ECF No. 34-4).

Courts consistently hold that actual notice of a lawsuit does not cure defective service. See *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 323 (S.D.N.Y. 2016) ("Actual notice of the lawsuit does not cure defective service"); *Carney v. Metropolitan Transp. Auth.*, 221 A.D.3d 447, 448 (1st Dep't 2023) (same). The Second Circuit has emphasized that plaintiffs bear the burden of proving valid service, and dismissal is proper where they fail to meet that burden. See *Vidurek v. Koskinen*, 789 F. App'x 889, 890 (2d Cir. 2019). Moreover, participation in preliminary proceedings does not waive objections to service. In *Orix Fin. Servs., Inc. v. Cline*, 369 F. App'x 174, 175 (2d Cir. 2010), the court explained that a defense of insufficient service is not waived unless the defendant litigates the merits without raising it. Here, the Domestic Supply Defendants did not get an opportunity to litigate the merits; they expressly objected while opposing to the Motion to Enforce.

The Supreme Court has held that "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Murphy*

*Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). In *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998), the Supreme Court rejected "hypothetical jurisdiction," holding that courts must confirm jurisdiction before reaching the merits.

Federal Rules of Civil Procedure 4(l)(1) and 4(m) reinforce these requirements: proof of service must be filed by affidavit, and service must be completed within 90 days of filing absent good cause. Courts consistently enforce these requirements. See *Carney v. Metropolitan Transp. Auth.*, 221 A.D.3d 447, 448 (1st Dep't 2023) (actual notice does not cure defective service; action never properly commenced); *Vidurek v. Koskinen*, 789 F. App'x 889, 892 (2d Cir. 2019) (mailing summons did not satisfy Rule 4(e)(2); plaintiffs bear burden of proving proper service); *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 322 (S.D.N.Y. 2016) (actual notice "does not excuse noncompliance with Rule 4(m)").

Accordingly, the record confirms that service was never made, that Defendants timely preserved their defenses, and that no conduct amounted to waiver. Respectfully, the R&R sidestepped a threshold due-process issue. Because no valid service was ever effected on either Mr. Barannikov or Domestic Supply, the Court lacks personal jurisdiction. Plaintiff's motion to enforce should be denied outright and the case dismissed. At a minimum, Defendants' request for leave to file an Answer and assert defenses and an evidentiary hearing should be granted so that due-process concerns may be addressed.

## II. The R & R Erred Because There Was No Agreement on All Material Terms (Winston Factor Three)

Even if the Court were to assume arguendo that jurisdiction existed despite the defects in service, the other due process concerns carry forward into the Winston analysis. The R&R concluded that "*the record shows that the parties had agreed to the material terms of a settlement*,"

specifically "a $45,000 payment, with Domestic Supply responsible for the full amount," and that "there is no other material term that remains outstanding, and this factor weighs in favor of enforcing the settlement." (R&R at 11–15). Respectfully, the record does not support that conclusion. The email communications are fragmented, leave unresolved the critical issue of allocation term was never assented to in a unified exchange, and the R&R relied on third-party declarations to resolve disputed facts without giving appropriate weight to the statements of the Domestic Supply Defendants.

## A. Fragmented Emails Left Allocation Unresolved

Plaintiff's October 2, 2024 email listed only three items—escrow, payment schedule, and Cheeks timing, and did **not** address which of the three defendants would be responsible for the payment. (ECF No. 22-3).

> *Cousnel [sic] / Mediator Weinick,*
>
> *To memorialize the outcome of today's mediation, the parties have agreed to resolve this action for a total of $45,000, structured as follows:*
>
> *1. $45,000 payable as follows:*
>
> *a. $15,000 payable via wire transfer or certified check on or before November 1, 2024;*
>
> *b. $15,000 payable via wire transfer or certified check on or before December 1, 2024; and*
>
> *c. $15,000 payable via wire transfer or certified check on or before December 31, 2024.*
>
> *2. Payments 1(a) – _1(c) to be made directly to Defendant(s)'_counsel's escrow account.*
>
> *3. The filing of the disposition of the matter via Cheeks, will be made only upon Defendants'_counsel's receipt of the full settlement payment (i.e., the motion for Cheeks approval will not be filed until, on or around, December 31, 2024).*
>
> *Kindly confirm receipt of this email.*
>
> *Best,*
>
> *Jason Mizrahi ("Plaintiff's Oct. 2 Email," Ex. B to Mizrahi Supp. Decl., Dkt. 30-2.)*

On October 3, Defendant ITG's counsel wrote:

*"On behalf of Defendant ITG, we can confirm paragraphs 1(a) through 1(c) and 2 below, except clarify that all settlement payments will be made directly by Domestic Supply to Plaintiff and/or your firm. ITG will not be making a payment to Plaintiff or your firm. As for paragraph 3, we take no position and defer to Domestic Supply as to their preference."* (ECF No. 22-4; see also Ex. D to Mizrahi Supp. Decl., Dkt. 30-4.)

On October 7, Domestic's then-counsel replied **only** to Plaintiff's October 2 email (**not reply-all**), stating:

"*Good afternoon Jason,*
*On behalf of Defendant Domestic Supply, we confirm paragraphs 1-3.*
*Thank you, Steven."*

(ECF No. 22-5; see also Ex. E to Mizrahi Supp. Decl., Dkt. 30-5.)

That October 7 message was addressed only to Plaintiff's counsel, did **NOT** reference ITG's October 3 disclaimer, and did **NOT** acknowledge Domestic assuming 100% of $45,000. There is no single, unified communication reflecting a shared understanding among **all** parties on allocation, which is a material term. As the Second Circuit held, "because significant terms remained open, we hold that the district court erred in enforcing the settlement." *Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 82–83 (2d Cir. 1985).

**B. Additional Essential Terms Remained Open and There are Other Ambiguities**

Beyond allocation and tender, other material terms remained unresolved. The October emails leave unanswered: (1) The timing of payment BEFORE *Cheeks* approval (ECF No. 22-3 ¶

3); (2) The scope of the release; (3) Allocation of attorneys' fees and costs; (4) Default or enforcement provisions for non-payment; and (4) Any terms of confidentiality or non-disparagement. See *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997) ("Because the parties intended not to be bound until their agreement was reduced to writing and signed, and because significant terms remained open, we conclude that the district court erred in enforcing the settlement agreement."). In the FLSA context, these are material protections that must be set forth in a written, judicially approved agreement. The fact that plaintiff later circulated a detailed settlement agreement including these provisions, respectfully shows, that the October emails did not have all the material terms.

Even if the Court were to find some agreement in principle, the fragmented threads, inconsistent recipient lists creates ambiguity as to whether all parties assented to the same terms. Under *Winston* and *Ciaramella*, such ambiguity precludes enforcement. *Ciaramella*, 131 F.3d at 323.

### III. No Express Intent to Be Bound Until Signed Writing (*Winston* Factor One)

The R&R concluded that Factor One favored enforcement, reasoning that the October 2024 emails reflected assent and that "the parties did not expressly condition their agreement on execution of a formal written settlement." (R&R at 13). Respectfully, the record demonstrates otherwise.

Mr. Barannikov testified under oath that he did not believe mediation could result in a binding agreement absent a signed writing:

- *"I did not believe that anything said at the mediation was binding until an agreement is signed and I was under the impression that we came there to negotiate."* (Barannikov Decl. ¶ 6, ECF No. 27-1).

- *"At the mediation no settlement was reached, and I was under the impression that negotiations are still continuing and that I would have an opportunity to review the terms of the proposal after my lawyer receives a draft of the settlement agreement. I also believed that the mediation was not binding until I signed the agreement."* (Id. ¶ 10).

- *"I did not intend to agree to the proposed settlement agreement (according to the provided terms)… Furthermore, no settlement agreement was ever signed by me."* (Id. ¶ 13).

- *"I was not provided with a full and clear explanation of the terms contained in the emails… I believe I was not given an adequate opportunity to provide informed consent to any part of the settlement and at no point did I agree to the terms of the settlement as they are presented by the Plaintiff and the co-defendant."* (Id. ¶ 14).

These statements reflect Barannikov's contemporaneous understanding: that nothing would be binding until a written settlement agreement was prepared, reviewed, and signed. In addition, the surrounding circumstances objectively show why a written confirmation was reasonable and expected.  For example, Mr. Barannikov retained Attorney Zuck, who "*did not take a fee for his services (pro bono) and primarily handles criminal and immigration matters, Mr. Zuck assured me that he could handle my case*." (Id. ¶ 5). In reality, Attorney Zuck was a young, inexperienced attorney without meaningful FLSA or civil litigation experience. Mr. Barannikov also explained:

"*I have difficulty understanding English and partially relied on Mr. Zuck's translations and explanations… There was no professional interpreter provided.*" (Id. ¶ 9).

Viewed objectively, these factors would have made it obvious to the other participants, including opposing counsel and the mediator, that there was a heightened risk of misunderstanding and that any agreement would require explicit confirmation in a signed writing by the responsible party. However, the R&R did not fully credit this sworn evidence or the fact that, in the FLSA context, judicial approval under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 205–06 (2d Cir. 2015), necessarily requires submission of a written settlement agreement, requiring a signature from the responsible parties, to prevent a similar type of situation from occurring.

Accordingly, while the R&R viewed Winston Factor One as favoring enforcement, respectfully, the record supports the opposite conclusion. As in *Winston v. Mediafare* Ent. Corp., 777 F.2d 78, 82–83 (2d Cir. 1985), and *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 323 (2d Cir. 1997), the absence of intent to be bound until execution of a written agreement weighs against enforcement.

## III.    Winston Factor Four and Cheeks Require a Written, Court-Approved Agreement

The R&R concluded: "I do not find the agreement to be the kind that is usually committed to writing. Thus, this factor also weighs in favor of enforcing the settlement." (R&R at 12). The Magistrate reasoned that the alleged agreement was "relatively simple" and cited *Xie v. JPMorgan Chase Short-Term Disability Plan*, No. 15-CV-4546, 2017 WL 2462675, at *4 (S.D.N.Y. June 7, 2017). And *Est. of Andrea Brannon v. City of New York*, No. 14-CV-2849 (AJN), 2016 WL 1047078, at *3 (S.D.N.Y. Mar. 10, 2016). Respectfully, however, neither of these case deal with the FLSA or the agreements therein were subject to *Cheeks*, this analysis overlooked controlling

precedent and failed to reconcile the Winston framework with the binding requirements of *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). And allowing settlements such as this to proceed would create dangerous precedent in FLSA cases.

In FLSA cases, that prudence is a mandate. In *Cheeks*, the Second Circuit held: "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The *Cheeks* court emphasized that the FLSA is "a uniquely protective statute" enacted to address "the unequal bargaining power as between employer and employee," and that private settlements risk "unreasonably high" attorneys' fees, "overbroad releases," and "confidentiality provisions" that undermine the statute's remedial purpose. *Id.* The court reasoned that judicial or DOL approval serves as a safeguard against these risks, ensuring that settlements are fair and reasonable. Judicial approval is therefore not optional; it is a statutory safeguard against precisely the kind of informal, one-sided resolution at issue here.

This case illustrates why *Cheeks* applies with full force. The October 2 email itself contemplated that *Cheeks* approval would be sought only *after payment* (ECF No. 22-3 ¶ 3). That arrangement is inconsistent with *Cheeks*, which requires approval *before enforcement*. Defendants were never properly served (ECF No. 12), had no opportunity to file an Answer or Rule 12 motion, and were represented at mediation by inexperienced counsel who ignored explicit instructions. Mr. Barannikov, who has difficulty understanding English, declared under oath that he never understood or authorized a $45,000 settlement (ECF No. 27 ¶¶ 7-9; ECF No. 34 ¶¶ 3–4).

Enforcing unsigned, fragmented emails in this posture would bypass the judicial scrutiny required by *Cheeks* and produce the very inequitable result it was designed to prevent. While the R&R acknowledged that FLSA settlements are usually written, it minimized this factor as not

dispositive. Respectfully, in the FLSA context, it *is dispositive*. Without a signed writing and judicial approval, no enforceable FLSA settlement exists.

## IV.    The Fact that there Was No Partial Performance Should Weigh in Defendant's Favor

The R&R correctly recognized that "there has been no partial performance by any party" (R&R at 14). Respectfully, however, it erred in treating that fact as "neutral." Under controlling precedent, the absence of partial performance weighs against enforcement. In *Winston v. Mediafare Ent. Corp.*, the Second Circuit expressly noted: "There was no evidence of partial performance of the settlement agreement." 777 F.2d 78, 82 (2d Cir. 1985). The absence of performance was one of the reasons the court reversed enforcement.

Here, the absence of performance is reinforced by explicit repudiation. On November 13, 2024, Domestic's counsel stated unequivocally: "*Domestic Supply will not be moving forward with settlement at this time.*" (ECF No. 22-6). That repudiation before any performance underscores that Defendants themselves never treated the October 7 email as binding. Thus, while the Magistrate was correct that no performance occurred, under *Winston* this fact should have been weighed in favor of Defendants, not treated as neutral.

## V.    Counsel Exceeded Limited Authority, and Domestic Supply Never Accepted ITG's Tender

The R&R erred in concluding that Attorney Zuck had apparent authority to bind the Domestic Supply Defendants and that Domestic Supply accepted ITG's tender. Both findings rest on disputed issues the Court cannot resolve on the papers.

While courts presume an attorney of record has authority to settle, that presumption is rebutted by "clear evidence." *In re Artha Mgmt., Inc.*, 91 F.3d 326, 330 (2d Cir. 1996). The record

contains such evidence. Mr. Barannikov swore: *"To be clear: I never agreed to settle this case for any amount greater than $5,000. I never authorized any attorney to agree to such a settlement on my behalf, nor did I consent to any agreement that would obligate me or Domestic Supply Inc. to pay Plaintiff $45,000.."* (ECF No. 34 ¶ 3). And he testified regarding the post-mediation emails: "*These emails were not authorized by me and do not reflect any agreement I approved. Any statements or representations made by my former counsel were made without my review or consent.*" (Id. ¶ 10)

The R&R also concluded that "Domestic Supply accepted ITG's tender" based on the Paris Declaration. (R&R at 10). Respectfully, that is not an undisputed fact. Mr. Barannikov testified: *"I was informed over the phone and through counsel—that any settlement amount beyond $5,000 would be covered by co-defendant ITG Communications. I never agreed that Domestic Supply Inc. would be responsible for paying more than $5,000, let alone the entire alleged settlement sum of $45,000. I would not have accepted such terms under any circumstances."* (ECF No. 34 ¶ 7).

These sworn statements foreclose any finding of actual authority. Nor does the record support apparent authority. New York law consistently holds that apparent authority arises only from the words or conduct of the principal, communicated to a third party, which reasonably gives the appearance that the agent has authority to act. The agent cannot create apparent authority through their own actions or representations. *Hallock v. State*, 64 N.Y.2d 224, 231 (1984) (apparent authority depends on misleading conduct by the principal, not the agent).

The Second Circuit is in accord: "[A]pparent authority is not established by the actions or representations of the agent; rather, the existence of apparent authority depends upon the words or conduct of the principal, communicated to a third party." *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989). See also *Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R.L.*

*De C.V.*, 147 F.4th 73, 80 (2d Cir. 2023) (no apparent authority where principal did nothing to confer authority); *Herbert Constr. Co. v. Continental Ins. Co.*, 931 F.2d 989, 993 (2d Cir. 1991) (apparent authority requires conduct of the principal communicated to the third party); *Lynch v. Lynch*, 122 A.D.2d 572, 573 (4th Dep't 1986) (apparent authority cannot arise from agent's own representations).

Here, there is no evidence that Mr. Barannikov personally conveyed to Plaintiff or its counsel that Attorney Zuck had authority to settle for $45,000 or to assume ITG's obligations. The only manifestations came from Attorney Zuck himself: contrary to his client's sworn instructions and understanding. Under *Hallock* and *Fennell*, that is insufficient as a matter of law to establish apparent authority. Accordingly, both actual and apparent authority are lacking, and the R&R's reliance on the ITG/*Paris Declaration* and the presumption of authority cannot substitute for the factual showing the law requires.

### VI.   Plaintiff's Vexatious Litigation and Defendants' Meritorious Defenses

Respectfully, the R&R did not give sufficient weight to the record of Plaintiff's repeated and unsuccessful attempts to litigate the same claims across multiple forums. As reflected in the exhibits submitted with Defendants' supplemental letter (ECF Nos. 34-1, 34-2, 34-3, 34-4), Plaintiff has pursued these allegations in small claims court, administrative proceedings, and workers' compensation filings. Each was dismissed or withdrawn. This pattern underscores both the lack of merit in Plaintiff's claims and the risk of permitting duplicative litigation to proceed unchecked.

In addition, the record contains evidence of meritorious defenses that have yet to be adjudicated. The Independent Contractor Agreement (ECF No. 34-2) demonstrates that Plaintiff operated through Denis US LLC as an independent contractor, not an employee. Plaintiff's own

prior filings (ECF Nos. 34-1, 34-3) reflect the same understanding, further undermining the premise of his wage-and-hour claims. These materials raise serious defenses under the FLSA and state law that warrant full consideration.

Defendants have already incurred significant legal expense, reputational harm, and lost business opportunities as a result of Plaintiff's repeated efforts to reassert these claims. Allowing enforcement of an unsigned and disputed settlement would only compound that prejudice. Respectfully, the Court should decline to adopt the R&R, deny Plaintiff's motion to enforce, and permit Defendants to file an Answer asserting their defenses and, if appropriate, counterclaims for tortious interference and related damages so that the case may be resolved on the merits.

## CONCLUSION

For the foregoing reasons, the Domestic Supply Defendants respectfully submit that the R&R should not be adopted. Because Plaintiff never effected proper service, this action should be dismissed for lack of personal jurisdiction. In the alternative, the Court should deny Plaintiff's motion to enforce the alleged settlement and permit Defendants to file an Answer asserting their defenses and counterclaims. At a minimum, the Court should order an evidentiary hearing before considering enforcement.

Dated: September 12, 2025
            Brookly, New York                                        Respectfully submitted,

                                                                            /s/ *Denis Vorontsov, Esq.*
                                                                            Vorontsov Law Firm, PLLC
                                                                            1599 E. 15th Street, 4th Floor
                                                                            Brooklyn, NY 11230
                                                                            Tel: (212) 295-5838

                                                                            *Attorney for Domestic Supply*
                                                                            *Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that September 12, 2025, I caused the foregoing Defendants' Objections to the Report and Recommendation of Peggy Kuo, United States Magistrate Judge, to be filed with the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record.

Dated: September 12, 2025
      Brookly, New York                Respectfully submitted,

                               */s/ Denis Vorontsov, Esq.*
                               Vorontsov Law Firm, PLLC
                               1599 E. 15th Street, 4th Floor
                               Brooklyn, NY 11230
                               Tel: (212) 295-5838

                               *Attorney for Domestic Supply Defendants*